UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
SAFURA NAQVI,

                        Plaintiff,                         **COMPLAINT**

                                             Index No.:  25-CV-5440

        -against-

PEARSON EDUCATION, INC. d/b/a PEARSON VUE,     ***JURY TRIAL DEMAND***
and LOUIS PAPAS, individually and as employee of
Defendant PEARSON EDUCATION, INC.,

                        Defendants.
_____X

    Plaintiff SAFURA NAQVI, by her attorneys, Sheharyar Ali Law Group, P.C.,

complaining of the defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff is a person diagnosed and prescribed medication for Post Traumatic Stress Disorder (PTSD), Attention Deficit Hyperactivity Disorder (ADHD), anxiety, depression, insomnia, and night terrors.

2. Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to causes of actions based on violations of the American's with Disabilities Act, among other intentional and negligent tortious actions as defined under common law, laws of the State of New York, and violations of Plaintiff's civil rights, as said rights are secured by said statutes and the Constitution of the United States, and the Constitution of the State of New York.

**JURISDICTION**

3. This action is brought pursuant to Fourteenth Amendments to the Constitution of the United States and the Law of the State of New York, including the Americans with Disabilities Act ("ADA").

**VENUE**

4. Venue and Jurisdiction is properly laid in the Eastern District of New York under 28 U.S.C. § 1391, and subject matter jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction over New York State law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), as the incidents alleged herein occurred in this district.

7. That all conditions precedent, if any, to instituting the lawsuit have been complied with in a timely manner.

**JURY DEMAND**

8. Plaintiff demands a trial by jury in this action on each of his claims for which a jury trial is legally available.

**PARTIES**

9. At all times mentioned herein, Plaintiff SAFURA NAQVI ("Plaintiff") was and is a resident of the County of Nassau, in the State of New York.

10. Defendant, PEARSON EDUCATION, INC., d/b/a PEARSON VUE, ("Pearson") is a corporation formed under the laws of the State of Delaware and is authorized to conduct business in the State of New York as a Foreign Business Corporation.

11. Defendant, LOUIS PAPAS, ("Mr. Papas") was and is a resident of the County of Suffolk, in the State of New York, with address located at 61 Seusing Blvd., Hauppauge, New York 11788.

12. At all times relevant Defendant LOUIS PAPAS was an employee of Pearson, and they are sued herein in their individual capacities.

## FACTS

13. Plaintiff is a presently seeking to obtain licensing and pursue a career as a Physician's Assistant ("PA").

14. Plaintiff is diagnosed with and prescribed medication for anxiety, depression, Post Traumatic Stress Disorder (PTSD), ADHD, insomnia, and night terrors.

15. Defendant, Pearson, is a computer based, online and in person, test proctor for services for professional licensing, certification, and academic programs, including for the Physician Assistant National Certifying Examination ("PANCE").

16. To obtain a license to become a PA in the State of New York, a candidate must complete a bachelor's degrees in science or health related fields, complete a PA program accredited by the Accreditation Review Commission on Education for the Physician Assistant ("ARC-PA"), which is the equivalent of a master's degree program, and pass the PANCE administered by the National Commission on Certification of Physician Assistants. After all these steps, the candidate may then apply with New York State for their PA license.

17. The PANCE is a two (2) day exam with three hundred and fifty (350) multiple choice questions. PANCE test takers are permitted to bring to the testing site study materials,

including laptops, as long as those materials are kept in a locker outside of the exam room, and are only made accessible during scheduled breaks.

**Plaintiff's Educational Career and Health Struggles:**

18. In 2002, Plaintiff obtained her General Education Development (GED) certificate after returning to the United States from abroad.

19. After obtaining her GED, Plaintiff obtained an associate's degree in computer information systems, however, while completing her course work, she discovered her passion for healthcare and medicine. Plaintiff then obtained her associate's degree in health science and went on to obtain a bachelor's degree in science, major in Biology, and a second bachelor's degree in science, majoring in Physician Assistant Studies.

20. During her studies, Plaintiff experienced several severe and traumatic health events, including a life-threatening pregnancy complication which forced her to withdraw from the PA program for some time, and ultimately led to the termination of her pregnancy.

21. Shortly after graduation, Plaintiff discovered she was again pregnant with her third child, which was considered a high-risk pregnancy due to preliminary test results showing serious health concerns over the fetus' health.

22. This disturbing news took a further toll on Plaintiff's mental and physical health and made studying for the PANCE nearly impossible.  Notwithstanding these struggles, Plaintiff attempted to take the PANCE but regrettably did not pass.

23. Following the birth of her third child, Plaintiff was diagnosed with post-partum depression.

4

24. Plaintiff continued to prepare to retake the PANCE, all while raising a newborn infant, and homeschooling her children, who have special needs, during the COVID-19 pandemic. During this time, Plaintiff became pregnant with her fourth child.

25. Plaintiff was subsequently diagnosed with attention deficit hyperactivity disorder (ADHD).

26. Plaintiff's pressure to obtain gainful employment as a PA is compounded by her student loan debt which adds an additional layer of stress further acerbating her physical and mental health struggles.

27. Plaintiff continues to battle severe mental, emotional and physical health issues in the wake of her traumatic experiences, but despite these adversities continues to pursue a career as a PA.

28. Plaintiff, based on her diagnosis for anxiety, depression, Post Traumatic Stress Disorder (PTSD), ADHD, insomnia, and night terrors, is a "Qualified Person under the ADA.

**Plaintiff's Exam Prep for November 2024 PANCE:**

29. Leading up to the November 2024 PANCE test, Plaintiff took a twelve (12) month prep course, hired a professional tutor, and hired a babysitter on multiple occasions.

30. Plaintiff had a job offer at a Queens hospital as a neurosurgical PA, for which the starting salary is $120,000.00-$130,000.00.

31. Plaintiff had previously failed the PANCE exam six times prior to registering for the November 2024 PANCE exam.

32. After the sixth attempt, Plaintiff filed an appeal, citing health issues and extraordinary childcare requirements, for another opportunity to take the exam. The appeal was granted.

33. The November 2024 PANCE exam was the final opportunity for Plaintiff to sit for the PANCE exam.

**November 2024 PANCE proctoring at Pearson Professional Centers-Islandia:**

34. At all times relevant to the facts and incidents that establish the herein claims, Defendant, Mr. Papas, was an employee and/or agent of Defendant Pearson.

35. As of November 2024, Plaintiff completed all requirements to sit for the PANCE, which includes the education requirements of completing her bachelor's degree and ARC-PA program.

36. Plaintiff subsequently registered to sit for November 26, 2024, administration of the PANCE with Defendant, Pearson. See **Exhibit A**.

37. On November 13, 2024, Plaintiff received an email reminding her that she was scheduled to take the PANCE at the Pearson Professional Centers-Islandia location at the address located at 2950 Express Drive South, Suite 145, Islandia, New York 11749 ("Testing Center"). See **Exhibit A**.

38. The Testing Center at all times relevant to the facts, and incidents that establish the herein claims, was and is under the use, and control of Defendant, Pearson.

39. As part of Plaintiff's registration, she applied for testing accommodations which were to include, "[a] beverage [being] permitted during testing… [r]eciev[ing] an additional 100% of original time [total adjusted time 450 minutes]… [a]n increased scheduled break will be offered… Pearson VUE authorized scratch paper is permitted into testing room for note taking…[m]ay stand and move around as needed" and her test was to be delivered in a separate room. See **Exhibit A**.

40. On November 26, 2024, Plaintiff arrived at the Testing Center with her husband, whereby Plaintiff's husband remained in the lobby of the Testing Center.

41. Plaintiff realized that her laptop was not charged and asked a staff member of defendants for permission to leave her belongings and laptop in the lobby to charge. Plaintiff was granted permission to do so, after which Plaintiff began taking the PANCE exam administered by Defendant, Pearson.

42. Upon information and belief, sometime after the commencement of the exam Defendant Mr. Papas was complaining about Plaintiff's testing accommodation to Plaintiff's husband in a demeaning manner.

43. Upon information and belief, these insults by Defendant, Mr. Papas, against Plaintiff in front of Plaintiff's husband prompted Plaintiff's husband to speak up for Plaintiff. Defendant, Mr. Papas then escalated the disagreement into to a verbal altercation between Defendant, Mr. Papas, and Plaintiff's husband in the lobby of the Testing Center.

44. Defendant, Mr. Papas then became further irate and proceeded to seize and violently smash Plaintiff's laptop in the hallway of the Testing Center, destroying Plaintiff's laptop, as well as callously and impetuously flinging the remaining contents of Plaintiff's storage locker, including her study materials, documents and lunch, into the hall of the Testing Center.

45. Plaintiff's husband proceeded to call the Suffolk County Police Department ("SCPD") to report the incident.

46. During a scheduled exam break, Plaintiff went to retrieve items from her locker and became distraught and inconsolable after learning what Mr. Papas had done to her property.

47. Plaintiff asked Mr. Papas "did you do this to my laptop?", to which Mr. Papas responded "You want to cry? Cry all you want. Go home and cry. I'm tired of your accommodations since day one—and now today, I'm just going to shut off your exam."

48. Plaintiff's husband tried to console Plaintiff and suggested to Plaintiff to continue to take the PANCE exam, which Plaintiff attempted. However, Defendant, Mr. Papas burst into the testing room and accosted Plaintiff with threats to shut down her exam and to toss her out of the testing center if she did not leave.

49. Plaintiff appealed to other Pearson VUE staff at the Testing Center to intervene, but they all refused.

50. The SCPD did respond to the Testing Center whereby a Police Report was generated at approximately 12:10PM, November 26, 2025, detailing some of the facts of the incident ("Police Report"). See **Exhibit B**.

51. The Police Report indicates that Defendant, Mr. Papas, was served with a summons for Criminal Mischief: Intent to Damage Property under New York Penal Law Section 145.00. See **Exhibit B.**

52. On the same day, the Suffolk County District Attorney prepared a Misdemeanor Complaint formally laying out the charge of "Criminal Mischief: Intent To Damage Property in Violation of Section 145.00 01 of the NYS Penal Law" against Defendant, Mr. Papas. See **Exhibit C**.

53. In the Misdemeanor information, it is indicated by the sworn statement of Officer J. Giamanco #PO/7792 of the SCPD, that Defendant, Mr. Papas made an oral admission stating, "I Fucking Smashed it." See **Exhibit C**.

54. On the day of the test, Mr. Papas was serving as the exam proctor on behalf of Defendant Pearson, at the testing location, and was the proctor of Plaintiff's exam.

55. As proctor of the PANCE exam, Defendant, Pearson and Defendant, Mr. Papas' owed a responsibility to Plaintiff to maintain a secure and comfortable testing environment for candidates and ensure the integrity of the exam delivery process.

56. Specifically, Defendant, Mr. Papas' duties, among others, included checking in candidates, verifying identification, explaining the exam process, actively monitoring testing sessions, troubleshooting technical issues, and adhering to strict testing procedures and company policies.

57. Defendant, Pearson, and Defendant, Mr. Papas's had an obligation and duty of care to Plaintiff that included, among other things, to ensure a fair, secure and efficient administration of the PANCE to Plaintiff.

58. Upon information and belief, Defendant Pearson negligently hired Defendant, Mr. Papas, and failed to provide proper training, and supervision to Defendant, Mr. Papas.

59. Plaintiff, due to Defendant, Mr. Papas's acts and omissions detailed above was unable to continue taking the PANCE and therefore received no grade.

60. Due to this incident, Plaintiff's ability to apply for and obtain a PA license, and as such, seek gainful employment as a PA has been unreasonably delayed.

61. Due to the stress and fallout of this incident, Plaintiff has been treated for mental distress.

62. Upon information and belief, Defendant, Pearson, is a recipient of Federal and New York State Grant funding, the terms and conditions of which, among other things, require Defendant, Pearson to not discriminate on the basis of race, religion, disability, sex, etc.

63. Defendant Pearson and Defendant, Mr. Papas grossly, and intentionally harmed Plaintiff.

**Post November 2024 PANCE Exam Incident:**

64. Following the PANCE exam, Plaintiff needed to contact NCCPA to report the incident so she would be permitted to sit for the PANCE exam again.

65. NCCPA accepted Plaintiff's statement and invalidated her exam and granted an additional chance to take the PANCE exam.

### FIRST CLAIM
### Violations of the ADA Reasonable Accommodation Provision.

66. Plaintiff repeats, realleges, and incorporates by reference the allegations in the foregoing paragraphs of this complaint.

67. A primary purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individual with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

68. Title II's definition of "public entity" includes any state or local government or "any department, agency … or other instrumentality" of a state or local government. 42 U.S.C. § 12131(1)(A),(B).

10

69. Defendant, Pearson receives large sums of Federal and State funding to provide testing services, and said funding is utilized to operate testing sites, and pay employee salaries, including the aforementioned Testing Center, and Defendant, Mr. Papas.

70. As a condition to Defendant Pearson's receipt of the Federal and State funding, Defendant is compelled and agreed to comply with and extend certain Federal and State Constitutional and Statutory protections to Plaintiff and those individuals similarly situated as Plaintiff, including compliance with equal protection, and American Disability Act rights, i.e., extending testing accommodations to examinees who are qualified persons.

71. Defendant Pearson administers and proctors tests for professional licensing for PAs through the administering of the PANCE, which directly affects Plaintiff's ability to practice as a PA in the State of New York, a profession which is licensed by the State of New York.

72. As such, Defendant Pearson is a public entity within the meaning of 42 U.S.C. § 12131(1)(A), (B), and 28 C.F.R. § 35.104.

73. Plaintiff has a disability within the meaning of 42 U.S.C. §12102 (1), 28 C.F.R. §35.104 and 28 C.F.R. §35.108. A disability is a mental or physical impairment that substantially limits one or more major life activities, including attention deficit hyperactivity disorder, emotional or mental illness. 28 C.F.R. § 35.104.

74. Plaintiff is a "qualified individual[s] with a disability" within the meaning of 42 U.S.C. § 12132, 28 C.F.R. § 35.104, and 28 C.F.R. §35.108 because each is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices… or the provision of auxiliary aids and services, meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 C.F.R. § 35.104.

75. Defendants, including Defendant Pearson and their employees and agents, must ensure that qualified individuals utilizing their services are not excluded based on disability from participation in or denied the benefits of its services, programs or activities. 42 U.S.C. §12132 and 28 C.F.R. 35.130(a).

76. By the actions of the Defendants, including Pearson and Defendant Mr. Papas, Plaintiff, by reason of such disability, was "excluded from participation in or be[en] denied the benefits of the services, programs, or activities of a public entity and have been subject to discrimination" by that public entity in violation of Title II of the ADA, 42 U.S.C. § 12132.

77. The DOJ regulations implementing Title II of the ADA provides that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)1.

78. "Auxiliary aids and services" include:

   1) Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned

telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;

3) Acquisition or modification of equipment or devices; and

4) Other similar services and actions.

.28 C.F.R. § 35.104.

79. The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. § 35.106(b)(2).

80. Defendants' failure to provide appropriate auxiliary aids and services has subjected Plaintiff to discrimination on the basis of her disability in violation of her rights under

the ADA, in ways that include, but are not limited to the following (1) inadequate access to testing accommodations and other appropriate auxiliary aids and services to enable her to participate in and benefit from Defendants' programs and services.

81. Defendants Pearson and Mr. Papas subject Plaintiff to discrimination through their treatment of Defendant which resulted in the denial of testing accommodations to aid Plaintiff in participating in a fair, secure, and efficient administration of PANCE, a professional licensing examination necessary to practice as a PA in the State of New York, and other programs and services.

82. Plaintiff was unable to effectively take the PANCE necessary to complete her education, pursue employment as a PA, and further her career growth and economic prospects.

83. Defendant Pearson and Defendant Mr. Papas failed to provide effective testing accommodation or to provide comparable access to services, benefits, activities, programs despite Plaintiff's reasonable and timely request, Defendants contractual and legal obligations to provide accommodations to Plaintiff, and Defendants agreeing to provide such accommodations to Plaintiff.

84. As a proximate result of Defendants' violations of Plaintiff's rights under the ADA, Plaintiff has suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, violation of her ability to pursue her education and employment, loss of economic prospects, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment and unnecessary loss of rights and privileges.

85. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00)

14

DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

## SECOND CLAIM
### Disparate Treatment on The Basis of a Disability.

86. Plaintiff repeats, realleges, and incorporates by reference the allegations in the foregoing paragraphs of this complaint.

87. The DOJ regulations implementing Title II of the ADA provides that "a public entity in providing aid, benefit, or service, may not directly… through the basis of a disability – (i) [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; [or] (ii) [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or services that is not equal to that afforded to others." 28 C.F.R. § 35.130(b)(1).

88. Defendants Pearson and Mr. Papas violated the ADA by failing to provide Plaintiff, solely due to her disability, the same access to services, benefits, activities, programs, or privileges as provided to individuals not needing testing accommodation.

89. To comply with the ADA, Defendants Pearson and Mr. Papas, must allow Plaintiff to participate on an equal basis in the same programs, benefits and services that are available to qualified non-disabled test takers.

90. Defendants Pearson and Mr. Papas must carry out the administration of professional licensing examinations policies and procedures in a manner that affords full and equal treatment to disabled inmates.

91. As a result of Defendants' violations of the ADA, and its implementing regulations, Defendants are liable for damages, injunctive and declaratory relief pursuant to 42 U.S.C. § 12133.

92. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

## THIRD CLAIM
## Trespass to Chattels under State Law.

93. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

94. Defendants intentionally and without consent grabbed Plaintiff's laptop and smashed the laptop on the ground destroying Plaintiff's laptop.

95. Defendants intentionally and without consent exercised control over Plaintiff's property, i.e., Plaintiff's laptop, and destroyed Plaintiff's property.

96. Defendants' intentional act action of throwing Plaintiff's laptop on the ground, destroying Plaintiff's laptop resulting in an interference in Plaintiff's use of their laptop.

97. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

## FOURTH CLAIM
## Intentional Infliction of Emotional Distress under State Law.

98. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

99. Defendants engaged in extreme and outrageous conduct directed at Plaintiff, i.e., destroying their property, interrupting and interfering with the proctoring and administration of Plaintiff's professional licensing exam, PANCE.

100.    Defendants engaged in this extreme and outrageous conduct with intention to cause, or in reckless disregard of the substantial probability that it would cause Plaintiff severe emotional distress.

101.    Defendants extreme and outrageous conduct was the direct and proximate cause of Plaintiff's severe emotional distress.

102.    As a result of Defendants extreme and outrageous conduct Plaintiff suffered severe emotional distress.

103.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

**FIFTH CLAIM**
**Gross Negligence under State Law.**

104.    Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

105.    Defendants owed Plaintiff a duty of care to act with reasonable care and skill when providing test proctoring services to examinees, ensuring a fair, secure and efficient administered PANCE.

106.    Defendants breached their duty of care owed to Plaintiff by destroying Plaintiff's property, and interrupting and interfering with her PANCE examination.

107.    Defendants actions are wanton, reckless and are a gross deviation from the standard of care owed by Defendants to Plaintiff.

108.    Defendants through their wanton and reckless actions were the proximate and actual cause of the destruction of her property and of the interference with Plaintiff's ability to take the PANCE.

109.    Plaintiff has been harmed by Defendants' grossly negligent acts and omissions breaching Defendants' duty of care owed to Plaintiff

110.    Said harms include, but are not limited to, physical harm, pain and suffering which continues to this day, monetary expenses, lost wages and legal costs, damage to reputation, and severe physical, and emotional damage.

111.    All of the above-stated injuries and damages incurred by Plaintiff as a direct result of the Defendants' wanton and reckless actions were foreseeable and preventable by Defendants.

112.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

### SIXTH CLAIM
### Negligence under State Law.

113.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

114.    Defendants owed Plaintiff a duty of care to act with reasonable care and skill when providing test proctoring services to examinees, ensuring a fair, secure and efficient administered PANCE.

115.    Defendants breached their duty of care owed to Plaintiff by destroying Plaintiff's property, and interrupting and interfering with her PANCE examination.

18

116.    Defendants through their actions were the proximate and actual cause of the destruction of her property and of the interference with Plaintiff's ability to take the PANCE.

117.    Plaintiff has been harmed by Defendants act and omissions breaching Defendants' duty of care owed to Plaintiff

118.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

**SEVENTH CLAIM**
**Tortious Interference with Economic Development under State Law.**

119.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

120.    Defendants and Plaintiff had a contractual business relationship for Defendants to provide test proctoring services for Plaintiff to take a professional high stake examination, i.e., PANCE, the successful completion of which would allow Plaintiff to apply and obtain a license to practice as a PA in the State of New York.

121.    Defendants were aware of their relationship, as they reminded Plaintiff about her scheduled appointment to take the PANCE, and checked her into the Testing Center and seated her for the examination.

122.    Defendants acts and omissions intentionally interfered with their contractual, proctor/examinee, relationship.

123.    Defendants breached their duty of care owed to Plaintiff by destroying Plaintiff's property, and interrupting and interfering with her PANCE examination.

124.     Defendants through their actions were the proximate and actual cause of the destruction of her property and of the interference with Plaintiff's ability to take the PANCE.

125.     Plaintiff has been harmed by Defendants act and omissions breaching Defendants' duty of care owed to Plaintiff.

126.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

## EIGHTH CLAIM
### Negligent Hiring, Training, and Supervision of Employee(s) under State Law.

127.     Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

128.     By virtue of the foregoing, Defendant Pearson VUE is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees by Defendants' employees at the Testing Center with regard to their aforementioned duties.

129.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

## NINTH CLAIM
### Negligent Infliction of Emotional Distress under State Law.

130.     Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

131.    Defendants, by their aforementioned acts, did negligently cause Plaintiff to suffer mental and emotional distress and pain and suffering, serious permanent and physical injuries.

132.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## TENTH CLAIM
### Respondeat Superior under State Law.

133.    Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

134.    Defendant, Pearson is liable for the actions of individual Defendant, Mr. Papas under the *Doctrine of Respondeat Superior*.

135.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## ELEVENTH CLAIM
### New York State Constitutional Violations.

136.    Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

137.    Defendants foregoing acts and omissions breached the protections guaranteed to Plaintiff by the New York State Constitution Article 1 §§ 11 and 12, including, without limitation, her following rights:

    a.   Freedom from the denial of equal protection, privileges and immunities under the law; and

138.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION ($1,000,000.00) DOLLARS, as well as punitive damages, costs, and attorney's fees and any other relief this Court may find just and proper.

[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff respectfully request judgment against DEFENDANTS as follows:

1. Compensatory damages against all DEFENDANTS, jointly and severally;

2. Punitive damages against all DEFENDANTS, jointly and severally;

3. Reasonable attorneys' fees and costs pursuant to ADA; and

4. Such other and further relief as this Court deems just and proper.

Dated: September 29, 2025
      Valley Stream, NY

                                 SHEHARYAR ALI LAW GROUP, P.C.

                                 BY: Sheharyar Ali, Esq.
                                 *Attorney for Plaintiff*
                                 877 N Corona Avenue,
                                 Valley Stream, NY 11580
                                 (516) 734-1354
                                 ali@salawpc.com